UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JUAN TAJALLE,<br><br>                Plaintiff,<br><br>v.<br><br>CITY OF SEATTLE, SEATTLE PUBLIC LIBRARY, OFFICER SAM 8 a.k.a. JOHN DOE #1, and JOHN DOE #2,<br><br>                Defendants. | No. C07-1509Z<br><br>ORDER |

THIS MATTER comes before the Court on defendants' motion for partial summary judgment and dismissal. Having reviewed all papers filed in support of and in opposition to defendants' motion, the Court does hereby ORDER:

(1) Defendants' motion, docket no. 11, is GRANTED IN PART and DENIED IN PART;

(2) Plaintiff's Fourth Amendment claims, as alleged in his second and third causes of action, are DISMISSED without prejudice;

(3) To the extent plaintiff asserts a procedural due process claim in his fourth cause of action, such claim is DISMISSED without prejudice;

(4) In all other respects, defendants' motion, docket no. 11, is DENIED;

ORDER - 1

(5) Plaintiff's related motion for a continuance pursuant to Fed. R. Civ. P. 56(f), docket no. 16, is STRICKEN as moot; and

(6) The Clerk is directed to send a copy of this Order to all counsel of record.

**Background**

Plaintiff brings this action against the City of Seattle, the Seattle Public Library (the "Library"), and two security officers, alleging physical injury and violation of constitutional rights resulting from his expulsion and exclusion from the downtown branch of the Library. Plaintiff has alleged seven causes of action, the first five of which are brought pursuant to 42 U.S.C. § 1983: (i) Violation of First Amendment (freedom of speech and assembly); (ii) Violation of Fourth Amendment (unreasonable seizure); (iii) Violation of Fourth Amendment (unreasonable force); (iv) Violation of Fourteenth Amendment (due process); (v) Municipal Liability; (vi) Negligence; and (vii) Violation of Washington's Law Against Discrimination, specifically RCW 49.60.215, which prohibits discrimination at places of public resort.

The parties have presented widely divergent recitations of the underlying facts. Defendants, however, contend that, even under plaintiff's version of events, summary judgment and dismissal are warranted. Thus, for purposes of considering defendants' motion, the Court has relied primarily on plaintiff's account of the incident at issue.

Plaintiff Juan Tajalle, who is of Portuguese and Polynesian descent, suffers from a sinusitis condition in his left nostril, degenerative joint disease of the right shoulder (adhesive capsulitis), and various other ailments, including major depression and recurrent severe headaches, which have rendered him "disabled" within the meaning of the Social Security Act. Tajalle Decl. at 1:20, 1:23-26, 3:7-11 (docket no. 17); Social Security Administration Decision dated July 7, 1992, Exh. to Tajalle Decl. On June 14, 2006, while

ORDER - 2

plaintiff was on the first floor of the Library, he sneezed.[1] Tajalle Decl. at 1:22-24. Plaintiff then noticed two security guards were laughing. *Id.* at 1:26-27. Plaintiff observed that the guards were in the process of ejecting a homeless person from the Library, and plaintiff attempted to show support for this person by saying "hi." *Id.* at 1:27-2:9. Plaintiff asked the guards why they were laughing. *Id.* at 2:12. According to plaintiff, he spoke in a quiet tone, but he was warned by one of the guards that, if he continued being disruptive, he would be escorted out of the Library. *Id.* at 2:12-16.

Plaintiff alleges that he was never loud and did not use any expletives, but he was ordered by one of the guards to leave the Library. *Id.* at 2:17-18, 21. A guard walked ahead of plaintiff, toward the exit, and entered the revolving door. *Id.* at 2:23-28. Plaintiff protested that he could not use the revolving door, but then squeezed himself into the same compartment as the guard. *Id.* at 2:24-3:5; *see* Rambayon Decl. at ¶ 3 (docket no. 14). As the door rotated, plaintiff's backpack became wedged between the edge of the stall and the frame, and plaintiff fell[2] on his right shoulder, dislodging the Transcutaneous Electrical Nerve Stimulation ("TENS") device that the Veterans Administration Hospital had provided to plaintiff to block or alleviate the pain in his shoulder. Tajalle Decl. at 3:4-11.

Plaintiff claims that, when he reached over to get his blood pressure medication out of his backpack, the guard kicked the backpack away and placed his foot between plaintiff and

---

[1] Although plaintiff apparently agrees with defendants that the sneeze triggered the incident, plaintiff does not acknowledge the associated behavior that defendants attribute to him. Defendants recount that, after the sneeze, a disabled white male patron of the Library said "Gesundheit." Incident Report at 1 (spelling the German phrase as "gazoontike"), Exh. 1 to Adams Decl. (docket no. 15); Rambayon Decl. at ¶ 2 (docket no. 14). As the other patron walked past plaintiff, plaintiff leaned over and shouted, "Are you f—ing with me?" *Id.* The man indicated that he was not and walked away as quickly as possible. Incident Report at 1. Plaintiff then yelled at the security guards, "What are you smiling at?" Incident Report at 1; Rambayon Decl. at ¶ 2. When the guards did not answer, plaintiff approached the security desk and shouted, "Why are you f—ing with me" and "What the f— are you laughing at?" *Id.* According to defendants, verbal or physical harassment of other patrons or staff and disruption via loud talking or screaming constitute violations of the Library's rules of conduct. Exh. 4 to Gardner Decl. (docket no. 13).

[2] The security guard involved, Ulysses Rambayon, alleges that both he and plaintiff fell, but plaintiff asserts that the guard did not fall. *Compare* Rambayon Decl. at ¶ 3 *with* Tajalle Decl. at 3:6-7.

ORDER - 3

1  the backpack. *Id.* at 3:13-17.  Plaintiff asserts that he repeatedly told the guard he needed his
2  medicine, but the guard ignored his pleas for help. *Id.* at 3:14-19.  Seattle Fire Department
3  medics arrived at the scene.³  *Id.* at 3:24-25.  While waiting for an ambulance to transport
4  plaintiff to a hospital, the other security guard obtained plaintiff's name and information and
5  completed an exclusion order, barring plaintiff from the Library for fourteen (14) days. *Id.*
6  at 3:27-4:5; <u>see</u> Incident Report at 2, Exh. 1 to Adams Decl. (docket no. 15).  The exclusion
7  order was subsequently extended for six months, through December 13, 2006.  Gardner
8  Decl. at ¶ 4 (docket no. 13).  Plaintiff was advised of his right to request an administrative
9  review, but he never contested the exclusion order. *Id.* at ¶¶ 3 & 5; Tajalle Decl. at 4:15-17.
10 **Discussion**
11 **A.     First Amendment Claim**
12        With regard to plaintiff's first cause of action, defendants move for summary
13 judgment on the ground that plaintiff has not and cannot demonstrate an intent on the part of
14 the security guards to inhibit plaintiff's political speech.  As the movants, defendants bear the
15 burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v.*
16 *Catrett*, 477 U.S. 317, 323 (1986).  A fact is material if it might affect the outcome of the
17 suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In
18 considering a motion for summary judgment, the Court must believe the opposing party's
19 affirmative evidence and draw all "justifiable inferences" in its favor. *Id.* at 255, 257.  To

---

³ Plaintiff indicates that Officer Rambayon inquired whether plaintiff desired medical aid, but Officer Adams stated in his report that he was the person who asked plaintiff if treatment was required and he was the person who called 911. Tajalle Decl. at 3:15; Incident Report at 2, Exh. 1 to Adams Decl.  In his report, Officer Adams also recorded the following exchange:

> Officer Rambayon:   Did I cause you injury?
> Juan Tajalle:       No, man.  It wasn't your fault.  It was an accident.

Incident Report at 2, Exh. 1 to Adams Decl.  Finally, Officer Adams recounted in his report that, after two Seattle Fire Department medics pulled plaintiff up from the ground by grabbing his shoulders, the medics opined that plaintiff's shoulder was not, as he claimed, broken, and that, after having been deposited outside the Library, plaintiff engaged in an argument with the medics. *Id.*; *see* Seattle Fire Department Medical Incident Report at 2, Exh. 1 to Cowan Decl. (docket no. 12) ("no obvious injury to shoulder").

ORDER  - 4

1  demonstrate a First Amendment violation under 42 U.S.C. § 1983, a plaintiff must show that
2  the defendant's actions deterred or chilled the plaintiff's political speech and that inhibiting
3  plaintiff's speech was a "substantial or motivating factor" in the defendant's conduct.
4  *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir. 1999).

5        Although both security guards have submitted declarations indicating that they were
6  simply enforcing the Library's conduct rules and had no intent to deprive plaintiff of his
7  rights, *see* Adams Decl. at ¶ 2; Rambayon Decl. at ¶ 5, the facts alleged by plaintiff and the
8  inferences to be drawn therefrom give rise to a genuine issue concerning whether inhibiting
9  plaintiff's speech was a substantial or motivating factor in the guards' behavior. According
10 to plaintiff, he was not loud, abusive, or profane in his conduct toward the guards, and he
11 approached them in an effort to show support for a homeless person he believed the guards
12 were treating inappropriately. Defendants present contrary facts, but the Court may not
13 weigh credibility in deciding a motion for summary judgment, and it must draw all
14 reasonable inferences in favor of the non-movant, here plaintiff. Assuming the truth of
15 plaintiff's assertion that he spoke quietly and politely to the security guards, a justifiable
16 inference must be drawn that the security guards had no basis for directing plaintiff to leave
17 the Library and that their reason for doing so was to prevent him from, or to retaliate against
18 him for, supporting the harried homeless person, arguably a form of political speech.
19 Therefore, contrary to defendants' suggestion, the disputed facts are indeed material, and the
20 Court DENIES defendants' motion for summary judgment as to plaintiff's First Amendment
21 claim. As a result, the Court need not address plaintiff's alternative request for a
22 continuance pursuant to Fed. R. Civ. P. 56(f), and the Court STRIKES plaintiff's motion as
23 moot.

24 **B.     Other Section 1983 Claims**

25       As to plaintiff's remaining § 1983 claims, defendants move for dismissal pursuant to
26 Rule 12(b)(6). Although a complaint challenged by a Rule 12(b)(6) motion to dismiss need

not provide detailed factual allegations, it must offer "more than labels and conclusions" and

ORDER  - 5

contain more than a "formulaic recitation of the elements of a cause of action." <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1964-65 (2007).  The complaint must indicate more than mere speculation of a right to relief.  <u>Id.</u> at 1965.  When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court."  <u>Id.</u> at 1966.  A complaint may be lacking for one of two reasons:  (i) absence of a cognizable legal theory, or (ii) insufficient facts under a cognizable legal claim.  <u>Robertson v. Dean Witter Reynolds, Inc.</u>, 749 F.2d 530, 534 (9th Cir. 1984).  In ruling on a motion to dismiss, the Court must assume the truth of the plaintiff's allegations and draw all reasonable inferences in the plaintiff's favor.  <u>Usher v. City of Los Angeles</u>, 828 F.2d 556, 561 (9th Cir. 1987).  The question for the Court is whether the facts in the complaint sufficiently state a "plausible" ground for relief.  <u>Twombly</u>, 127 S. Ct. at 1974.  If the Court considers matters outside the complaint, it must convert the motion into one for summary judgment.  Fed. R. Civ. P. 12(d).  If the Court dismisses the complaint or portions thereof, it must consider whether to grant leave to amend.  <u>Lopez v. Smith</u>, 203 F.3d 1122, 1130 (9th Cir. 2000).

Defendants contend that plaintiff has failed to allege facts sufficient to state a claim for Fourth or Fourteenth Amendment violations.  As to the Fourth Amendment claims, defendants are correct, but plaintiff appears to provide enough to establish a plausible ground for relief under a substantive due process analysis.  Although both parties have provided materials outside the complaint, the Court has not considered them for purposes of defendants' 12(b)(6) motion, and it need not convert the motion into one for summary judgment.

With regard to the Fourth Amendment claims, plaintiff's complaint alleges merely that "[t]hrough threats of force and violence, the two officers attempted to remove the plaintiff from the library," that although "the plaintiff complained that he was disabled and would have a hard time going through the revolving door," the security guard "demanded

ORDER   - 6

that he go through the door anyway," and that "[a]s a result of trying to go through the door, the plaintiff got trapped in the revolving door and fell." Complaint at ¶ 10 (docket no. 4). Plaintiff nowhere asserts that the security guards detained him, handcuffed him, indicated in any way that he was not free to leave, displayed a weapon, or touched him in any manner. To establish a Fourth Amendment violation for purposes of § 1983, plaintiff must show, at a minimum, that he was seized, meaning that a governmental official terminated his "freedom of movement through means intentionally applied." See Scott v. Harris, 127 S. Ct. 1769, 1776 (2007). To prevail on a claim of excessive force, plaintiff must establish that the governmental official seizing him acted in a manner that was not objectively reasonable. See id. at 1776-79 (concluding that a police officer's ramming of a fleeing motorist's car, which resulted in a crash that rendered the motorist quadriplegic, was objectively reasonable in light of the danger the speeding motorist posed to innocent bystanders). Here, plaintiff has not alleged any facts to support a finding that he was seized within the meaning of the Fourth Amendment or that any force was exerted upon him, let alone an unreasonable amount of force. Thus, the Court GRANTS defendants' motion to dismiss plaintiff's second and third causes of action; however, the dismissal is without prejudice because plaintiff might be able to cure the defects. See Lopez, 203 F.3d at 1130 (leave to amend should be granted "if it appears at all possible" that the plaintiff can correct the defect at issue).

In addressing plaintiff's Fourteenth Amendment claim, defendants discuss both substantive and procedural due process. Plaintiff's complaint, however, does not allege a violation of procedural due process, and plaintiff apparently concedes that, for his own personal reasons, he did not take advantage of his right to a post-deprivation hearing. See Complaint at ¶¶ 25-28 (alleging merely that plaintiff has a right "to remain in a public place of his choice"); Tajalle Decl. at 4:15-17 (docket no. 17). In the response brief, however, plaintiff's counsel refers to the balancing test to be performed in assessing whether a pre-deprivation hearing is required by the due process clause; he does not, however, cite any

authorities or provide any analysis to support a contention that plaintiff was in any way entitled to a hearing before being expelled and/or excluded from the Library. Indeed, constitutional jurisprudence suggests otherwise. *See* <u>Zinermon v. Burch</u>, 494 U.S. 113, 132 (1990) ("[I]n situations where a predeprivation hearing is unduly burdensome in proportion to the liberty interest at stake, . . . or where the State is truly unable to anticipate and prevent a random deprivation of a liberty interest, postdeprivation remedies might satisfy due process."). Thus, to the extent that, in his fourth cause of action, plaintiff asserts a procedural due process claim, the Court GRANTS defendants' motion to dismiss such claim without prejudice.

On the other hand, the Court concludes that plaintiff's substantive due process claim satisfies the "plausibility" standard of Rule 12(b)(6). To establish a substantive due process violation, plaintiff must show either (i) deprivation of life, liberty, or property in a manner that "shocks the conscience" or "interferes with rights implicit in the concept of ordered liberty," <u>Nunez v. City of Los Angeles</u>, 147 F.3d 867, 871 (9th Cir. 1998), or (ii) infringement of a fundamental liberty interest[4] when the infringement is not narrowly tailored to serve a compelling state interest, <u>Washington v. Glucksberg</u>, 521 U.S. 702, 721 (1997). Defendants do not appear to dispute that plaintiff has a liberty interest in using the Library[5]; defendants simply contend that plaintiff's rights were not deprived in a manner that shocks the conscience. In making their argument, however, defendants ignore the premise of plaintiff's case. Plaintiff alleges that, for either no reason or an impermissible reason, the

---

[4] Plaintiff does not assert, and would be unlikely to prevail on a claim, that access to a public library is a fundamental interest on par with the right to marry, to have children, to marital privacy, or to terminate a pregnancy. As the Supreme Court has repeatedly counseled, the utmost care must be exercised in expanding the scope of fundamental rights, lest the matter at issue be placed "outside the arena of public debate and legislative action" and "subtly transformed into the policy preferences" of the members of the judiciary. <u>Washington v. Glucksberg</u>, 521 U.S. 702, 720 (1997) (holding that the right to assistance in committing suicide is not a fundamental liberty interest).

[5] *See* <u>Hill v. Derrick</u>, 240 Fed. Appx. 935 (3rd Cir. 2007) (recognizing that district court had concluded the plaintiff possessed, under state law, a statutorily-created liberty interest in using the public library, but affirming the summary judgment against plaintiff without reaching the issue because any due process rights plaintiff might have had were not violated).

ORDER - 8

1 Library's security guards expelled him from the premises, that they demanded he use the
2 revolving door despite his disability, which contributed to his physical injury, and that, when
3 he needed to access the medications in his backpack, one of the security guards kicked the
4 backpack out of his reach.  Complaint at ¶¶ 8-12.  Although defendants' evidence strongly
5 suggests otherwise, at this juncture, plaintiff has presented a sufficient case of deliberate
6 indifference to ward off dismissal pursuant to Rule 12(b)(6).  *See* *County of Sacramento v.*
7 *Lewis*, 523 U.S. 833, 849-50 (1998) (recognizing that deliberate indifference to medical
8 needs can satisfy the "shocks the conscience" standard).  Thus, the Court DENIES
9 defendants' motion to dismiss plaintiff's fourth cause of action.

10      As a corollary to their motion to dismiss plaintiff's § 1983 claims, defendants request
11 that the Court also dismiss plaintiff's fifth cause of action, which alleges municipal liability
12 for the actions of the Library and its personnel.  Defendants also assert that the security
13 guards at issue have qualified immunity from suit.  In addressing defendants' arguments, the
14 threshold question for the Court is whether "[t]aken in the light most favorable to the party
15 asserting the injury, do the facts alleged show the officer's conduct violated a constitutional
16 right."  *Scott*, 127 S. Ct. at 1774.  If the requisite constitutional violation is adequately
17 pleaded, then the Court must consider whether the right at issue "was clearly established" in
18 light of "the specific context of the case," *id.*, and whether "a reasonable public official could
19 have believed that the alleged conduct was lawful," *Hydrick v. Hunter*, 500 F.3d 978, 988-89
20 (9th Cir. 2007).  Defendants rely solely on a contention that no constitutional violation
21 occurred, and they have not briefed the remaining two inquiries necessary to a determination
22 of qualified immunity.  For the reasons described earlier, defendants have not established the
23 absence of genuine issues of material fact necessary to warrant summary judgment against
24 plaintiff on his First Amendment claim or the implausibility needed to justify dismissal of
25 plaintiff's substantive due process claim.  Thus, the Court DENIES defendants' motion to
26

1  dismiss on the ground of qualified immunity, but without prejudice to defendants reasserting
2  such defense in the event plaintiff is granted leave to amend his complaint or in a motion for
3  summary judgment brought after the parties have conducted further discovery.

4  **C.   State Law Claims**

5  Defendants move for dismissal of plaintiff's state law claims pursuant to 28 U.S.C.
6  § 1367(c)(3), which permits the Court to decline to exercise supplemental jurisdiction when
7  it has "dismissed all claims over which it has original jurisdiction."  In light of the Court's
8  rulings concerning plaintiff's § 1983 claims, the Court DENIES defendants' motion to
9  dismiss plaintiff's state law claims.

10  IT IS SO ORDERED.
11  DATED this 7th day of March, 2008.

                                    _____
                                    Thomas S. Zilly
                                    United States District Judge

ORDER  - 10